## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : |
| | : **CIVIL ACTION NO**. |
| | : **3:17-cv-30145-MGM** |
| **UNIVERSITY OF MASSACHUSETTS** | : |
| **AMHERST**, **LOUIS B. WARD**, *Assistant* | : |
| *Dean of Students, sued in his individual and* | : |
| *official capacities,* **PATRICIA CARDOSO-** | : |
| **ERASE,** *Associate Dean of Students, sued in* | : |
| *her individual and official capacities,* | : |
| **DEBORA D. FERREIRA,** *Title IX* | : |
| *Coordinator, sued in her individual and* | : |
| *official capacities,* | : |
| | : |
| **Defendants**. | : |
| | : |
| | : |

## PLAINTIFF'S SURREPLY IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Patricia M. Hamill, Esquire
(Pa. Attorney I.D. No. 48416)
(Admitted *Pro Hac Vice*)
Lorie K. Dakessian, Esquire
(Pa. Attorney I.D. No. 86102)
(Admitted *Pro Hac Vice*)
Conrad O'Brien PC
1500 Market Street, Centre Square
West Tower, Suite 3900
Philadelphia, PA  19102-2100
Tel:  (215) 864-9600
Email:  phamill@conradobrien.com
ldakessian@conradobrien.com

Michael R. Schneider, Esquire
(Mass. Bar No. 446475)
Good Schneider Cormier & Fried
83 Atlantic Avenue
Boston, MA  02110
Tel:  (617) 523-5933
Email:  ms@gscfboston.com

*Attorneys for Plaintiff John Doe*

Defendants' arguments regarding abstention have no basis in law or fact because even if the one case upon which they rely, *Doe v. Univ. of Kentucky*, 860 F.3d 365 (6th Cir. 2017), were binding in this Circuit – which it is not – that case is readily distinguishable on multiple grounds. Further, Defendants' contention that John has misstated certain University documents is refuted by UMass's own website pages, its own training materials, and its written hearing procedures.

As a threshold matter, this case is not only about the adequacy of procedures the University employs at student conduct hearings. The Complaint seeks redress for the Defendants' systematic abuse, dating back over a year ago to November 2016, of John's constitutional right to due process and the right to be free from gender discrimination under Title IX. Under Title IX, John had a right to a "prompt" and "equitable" investigation. (Compl. ¶ 28, citing 34 C.F.R. § 106.8(b)). These requirements seek to ensure that a student's due process rights are protected.[1] Notwithstanding the promptness requirement, and with full knowledge that due to the investigation John "may experience feelings of anxiety and uncertainty during this process" (*Id*. ¶ 53), the Defendants allowed the investigation to drag on for 225 days, much longer than the 60-day period set forth in UMass Amherst's own literature. (*See* UMass Amherst Annual Security Report for 2016, published in 2017, at 60-61(establishing 60 day investigatory period)). This not only caused John substantial mental distress and anxiety, it made any hearing unfair as the passage of time meant that witnesses who graduated have permanently left campus and memories of witnesses who may be available surely have faded. (Compl. ¶¶ 8-10, 27).

In addition to prejudicial delay, the investigation was inequitable, inadequate, and unreliable. Ward made no attempt to obtain an exculpatory text message sent by Jane Roe immediately after the alleged incident, even though two witnesses verified its existence to him.

---

[1] *See* Compl. ¶¶ 158-60, citing Department of Education 2001 Guidance, which specifically incorporates principles of due process in order to lead to "sound and supportable decisions."

The absence of this text message will make any hearing unfair. (Compl. ¶¶ 39, 118-20, 260). Even though there were inconsistencies in the complainant's story, Ward did not confront her with those inconsistencies but instead noted alleged "discrepancies" in the statements of witnesses whose recollection of events differed from the accuser. Ward's failure to confront Jane with her own inconsistencies and with the statements of other witnesses violated his duty to gather exculpatory evidence, the absence of which makes any hearing unfair. (*Id*. ¶¶ 123, 293). Defendants imposed gag orders on John and potential witnesses, which has prevented John from discussing the case with any witness for the last 10 months. (*Id*. ¶¶ 26, 35-38, 366). Defendants intimidated members of John's fraternity making it even less likely that witnesses would come forward. (*Id*. ¶¶ 40-44). And, as stated in the Student Conduct Hearing Board Procedures and Agenda, the University will not allow witnesses to attend the hearing unless they participated in the investigation and are "confirmed" as witnesses by the Dean's Office. (Compl. ¶¶ 275-83; *see also* Defs.TRO Opp. Ex. 1-A, UM 171-76). Defendants have withheld John's degree without a hearing for over six months with no basis for doing so in the Code or Academic Regulations. Defendants imposed interim restrictions on John barring him from all University activities and his graduation without any hearing and despite the fact that interim restrictions are only supposed to separate students for safety reasons. (*Id*. ¶¶ 45-69). Other abuses of John's due process and Title IX rights include not informing him of the status of the investigation, improperly withholding his degree, and revealing his confidential information. (*Id*. ¶¶ 29-32, 59-60, 70-74).

Despite all this, Defendants claim this Court should abstain because they will hold a hearing as good as that in *Kentucky.* First, it doubtful that *Kentucky* is good law in the First Circuit. As discussed in John's Opposition brief, the Supreme Court described the tests for abstention in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013), and noted that

2

federal courts have an unflagging duty to exercise federal jurisdiction, and that abstention is the rare exception. The court in *Kentucky* did not analyze abstention based on the *Sprint* tests. In addition, the *Kentucky* court assumed a strong state interest in student disciplinary proceedings. The court, however, failed to recognize the overriding **federal** interest in these proceedings. Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In 1997, the Department of Education (DOE) issued regulations requiring colleges and universities receiving federal funds to establish policies and procedures to address sexual assault, including student-on-student complaints. (Compl. ¶ 156, citing 62 Fed. Reg.12034). In 2001, DOE issued its 2001 Guidance. Guidance issued by the Department's Office for Civil Rights ("OCR") in 2011 and 2014 was rescinded by new Interim Guidance issued by DOE in September 2017. (*Id.* ¶¶ 158-63, 170, 175). It was precisely these federal regulations and DOE promulgations that this Court relied on in deciding *Doe v. U. of Mass. Amherst*, 2015 WL 4306521 at *7 & n.3 (D. Mass. July 14, 2015), observing that the "Department of Education . . . has published guidance for schools regarding the actions schools take in response to allegations of sexual harassment," and "[t]his court 'must accord [the Department's] interpretation of Title IX appreciable deference.'" (citation omitted).

Moreover, abstention is inconsistent with Congressional intent in requiring recipients of federal funds to waive sovereign immunity as a condition to receiving federal funding. 42 U.S.C. § 2000d-7 provides, *inter alia*, that a "State shall not be immune under the Eleventh Amendment of the Constitution … from suit in Federal court for a violation of … Title IX of the Education Amendments of 1972 …." This Court relied on 42 U.S.C. § 2000d-7 when it distinguished state

law claims, from which UMass Amherst was immune in federal court, from Title IX claims, from which UMass Amherst was **not** immune in federal court. *Doe v. U. of Mass. Amherst*, 2015 WL 4306521, at *5-6. Further, the extent to which *Kentucky* is even good law in the Sixth Circuit is questionable. In September 2017, more than three months after deciding *Kentucky*, the Sixth Circuit affirmed the district court's grant of a preliminary injunction against the university's suspension of a student. *Doe v. U. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). Although the *Cincinnati* decision cited *Kentucky*, it did not mention "abstention" and proceeded to uphold the injunction because the school did not permit meaningful cross-examination in the context of a he said/she said case. *Id*. at 401-03. The court also found that "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Id*. at 407 (citations omitted).

In any event, *Kentucky* is factually distinguishable. It presents the rare case where the University held two hearings, and after both hearings, the University's Appeals Board found the Hearing Panels had committed multiple due process errors, and remanded the case. *Id*. at 368 & n.2. These rulings by the Appeals Board showed there was an avenue for the plaintiff to raise his constitutional challenges to the fairness of the University's hearing process. There is no such avenue in this case even on appeal.[2] *Kentucky* is further distinguishable because, at a third hearing, the student "will be able to have the assistance of counsel," "submit questions for cross-examination" of his accuser, "call his own witnesses and present evidence, and offer any affirmative defenses he chooses." *Id*. Defendants erroneously claim that all of these rights will be afforded John. The student in *Kentucky* was given far greater protections than John will be afforded here at any hearing.

---

[2] The grounds for appeal are limited to "procedural error" (*i.e.*, instances when the University failed to follow its own Code procedures) and "new evidence." (Compl. ¶ 307).

4

- In *Kentucky*, nothing in the procedures limited argument to a 10 minute closing, as here. (UM 176). Opening argument would permit John to introduce the facts, the witnesses and his defense to the Hearing Board. Instead, the Dean's Office will introduce the evidence. Restricting argument to 10 minutes at the close of the case on its face does not allow the accused an adequate opportunity to present a case. With these limits, Defendants' assertion that "there is no set time for completion of the hearing" (Reply 3) is misleading.

- Defendants' assertion that the hearing is "open-ended" (Reply 3) is similarly misleading. As alleged in the Complaint, there is a tightly controlled Hearing Agenda that is extraordinarily limited. (Compl. ¶¶ 279-83; *see also* UM 174-76).

- In *Kentucky*, the accused was permitted the assistance of counsel. Here, under the Code "Advisors (including attorneys) may only act in an advisory capacity and may not represent you or otherwise participate in the hearing." (Compl. ¶ 289; UM 171).

- In *Kentucky*, cross-examination through the Hearing Panel was permitted without any indication that questions were restricted. Here, as Defendants admit (Reply 3), the Hearing Board reviews questions submitted by the parties and "states that it will 'consider them during questions.'" Thus, the Hearing Board is free to disregard questions posed, including those that may be most crucial to developing the evidence. Although the Agenda contemplates that the Hearing Board will ask the complaining witness and accused student whether they "feel that all questions submitted have been addressed?" (UM 175), the Agenda does not require the Board to ask all, or even any, of the questions submitted by an accused student. (*See also* Compl. ¶ 282).

- Not only can the Hearing Board not ask questions, it is required to ask "the victim" questions in a manner that avoids "judgment or blame," and to follow "trauma-informed" questioning. (*Id*. ¶¶ 215-16). Defendants admit in their Reply (at 3) that witnesses can be asked "can you describe what happened from your perspective?" Limiting questions in this fashion does not permit the questioner to challenge inconsistencies. There was no such limitation on the form of questions in *Kentucky*. Such a limitation is clearly inconsistent with the Sixth Circuit's later decision in *Cincinnati*, which recognized that the non-confrontational questions had been mandated by DOE's 2014 Guidance, but that Guidance has been rescinded by DEO's 2017 Interim Guidance. 872 F.3d at 403-04.

- In *Kentucky*, the student was permitted to "call his own witnesses and present evidence." Here, only individuals who have submitted statements in the investigation, and who have been "confirmed" as witnesses by the Dean's Office, can attend the hearing. (UM 171). Nor can a student "call his own witnesses" and elicit direct testimony from them. Instead, the Hearing Board calls and questions witnesses if it chooses. (Compl. ¶¶ 193-94; UM 175).

- While a student may be permitted to include certain documents in a packet before the hearing, unlike in *Kentucky*, John will be given no opportunity to "present evidence," *i.e.*, explain what the evidence is to the Hearing Board. (*Id.*)

- Nor as in *Kentucky* can John "offer any affirmative defenses he chooses." There is nothing in the hearing procedures that says a student can offer affirmative defenses, much less any affirmative defense he chooses.

Defendants' other argument that John has misstated certain University documents fares no better. For example, the term "survivor" comes from UMass's own Title IX website:

> UMass Amherst's response to sexual harassment, sexual violence, dating violence, domestic violence, stalking, and other sexual misconduct are informed by best practices in providing **survivor-centered, trauma informed support**.
>
> **The university balances the mandate to investigate reported assaults with a response that empowers survivors to take back control of their lives**. . . . In support of a trauma informed response, the campus has examined its policies and protocols **to reduce the potential of re-traumatizing the survivor**, **such as providing training to conduct board members, minimizing the number of times a survivor tells the narrative of the assault,** [and] offering remedies whether or not the survivor chooses to make a formal report ….

(Compl. ¶¶ 78, 207, 210 with link to https://www.umass.edu/titleix/title-ix-reporting-and-response) (emphasis added) (link attached as Ex. 1). The University's withdrawal of due process rights in sexual misconduct proceedings is set forth in changes to the Code, from the level of due process rights before 2011 to the erosion of those rights after issuance of OCR's 2011 Dear Colleague Letter. (Compl. ¶¶ 189-97). Defendants' quote from the "Believe" section of UMass's website (Reply 4) is misleadingly cropped. The website actually states:

**Believe**
- Don't question. Don't judge. Just believe and support.
- Never blame someone who has been abused or assaulted or try to minimize their experience.
- Never ask questions or say things like:
  *"Are you really sure that's what happened?"*
  *"It couldn't have been that bad."*
  *"What did you do to bring that on?"*
- Everyone responds to trauma differently. There is no one right way for a survivor to respond after being assaulted or abused. Never interpret someone's emotions (or apparent lack of emotion) as evidence that sexual misconduct didn't occur.

(*Id*. ¶ 223, with link to https://www.umass.edu/umatter/sexual-misconduct/stand-up) (link attached as Ex. 2). Defendants claim the website addresses "how to support a friend." (Reply 4).

In fact, the word "friend" is not mentioned on the relevant portion of the website. Rather, the word "Believe" is supposed to apply far more broadly than to just a "friend." Students are told to apply the word if "someone tells you that this has happened to them." Ex. 2. Defendants also claim that the Center for Women and Community is "unrelated to the discipline process" (Reply 4) is false. (*Id*. ¶¶ 213-16; *see also* https://www.umass.edu/cwc/our-events/professional-trainings) (attached as Ex. 3). CWC expressly states that it provides "Conduct Board Training":

> This training, offered for campus conduct boards, provides participants with a better understanding of trauma and the impact of trauma. Participants will discuss strategies and considerations for engaging in a conduct process that is sensitive to the needs of survivors.

The CWC's prominent role in the hearing is made plain from Hearing Board Training Materials (excerpts attached as Ex. 4). As alleged, CWC's mission is to provide "advocacy and support services that address the cause and impact of sexism and recognize multiple oppressions experienced by women." (Compl. ¶ 200). Finally, the Men & Masculinities Center, which indisputably pushes gender stereotypes, is also part of the disciplinary system. (*Id*. ¶¶ 226-30; *see also* https://www.umass.edu/masculinities/support#Educational Sanctions (attached as Ex. 5, stating "We offer a program for men who violated certain aspects of community standards …. to reflect upon … the ways in which adherence to masculine norms influenced their choices.").

| | |
|---|---|
| /s/ Patricia M. Hamill | /s/ Michael R. Schneider |
| Patricia M. Hamill, Esquire | Michael R. Schneider, Esquire |
| (Pa. Attorney I.D. No. 48416) | (Mass. Bar No. 446475) |
| Lorie K. Dakessian, Esquire | Good Schneider Cormier & Fried |
| (Pa. Attorney I.D. No. 86102) | 83 Atlantic Avenue |
| (Both Admitted *Pro Hac Vice*) | Boston, MA  02110 |
| Conrad O'Brien PC | Tel:  (617) 523-5933 |
| 1500 Market Street, Centre Square | Email: ms@gscfboston.com |
| West Tower, Suite 3900 | |
| Philadelphia, PA  19102-2100 | *Attorneys for Plaintiff John Doe* |
| Tel:  (215) 864-9600 | |
| Email:  phamill@conradobrien.com | Dated: December 28, 2017 |
| ldakessian@conradobrien.com | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via email to those indicated as non-registered participants on December 28, 2017.

/s/ Michael R. Schneider
Michael R. Schneider, Esquire